[No. 3689.  Decided December 6, 1900.]

FRED F. WILLIAMS, *Appellant,* v. GEO. W. NINEMIRE et al., *Respondents.*

PLEADING—STRIKING OUT IMPERTINENT ISSUES.

The action of the court in striking out portions of a reply which are not pertinent to the issues raised by the complaint and answer is not error, even if the portions stricken are in response to impertinent matters alleged in the answer.

CUSTOMS—EXCLUSION BY CONTRACT.

In an action for the price of cattle sold by plaintiff to defendants, in which plaintiff alleges a contract for delivery at one point and the defendants allege delivery was to be made at another point, where it was agreed the cattle were to be weighed, evidence of custom is inadmissible for the purpose of showing that, where cattle were sold to be weighed at a designated point, title to the cattle was considered as not passing to the buyer until they had been weighed, since the pleadings show that the point of delivery was a matter of express contract between the parties.

SAME—PROOF OF USAGE—OPINION EVIDENCE.

The existence of a custom cannot be established by the mere opinions of witnesses, but must be proved as any other fact.

SALES—DELIVERY—INSTRUCTIONS.

In an action to recover the price of cattle sold, in which the point of delivery was an issue, as the cattle were lost between the point of embarkation and the point of destination, an instruction which charges the jury that plaintiff cannot recover unless he prove that the cattle were not only delivered to the defendants at the point of embarkation, but that at the time of such delivery the title thereto vested in the defendants, or, in other words, that they became the absolute owners of the cattle at that point, is erroneous, since proof of absolute delivery would be proof of transfer of title, while the instruction given would lead the jury to believe that something more was required.

Appeal from Superior Court, Chehalis County.— Hon. CHARLES W. HODGDON, Judge.  Reversed.

*Hogan & Abel,* for appellants.

*Irwin & Bridges,* for respondents.

The opinion of the court was delivered by

WHITE, J.—The facts in this case sufficiently appear from the pleadings. The second paragraph of the complaint, containing the contract sued upon in this action, is as follows:

"That during the month of June, 1899, said plaintiff, at the special instance and request of said defendants, sold and delivered unto the said defendants at London, in said county and state, the following live stock, to-wit:

| | |
|---|---:|
| 6 fat cows, wt. 7500 ℔s., at 3½c per ℔., value.. | $262.50 |
| 2 fat stags, wt. 2900 ℔s., at 3½c per ℔., value.. | 101.50 |
| 5 fat steers, wt. 6750 ℔s., at 4c per ℔., value.. | 260.00 |
| 6 fat calves, wt. 1200 ℔s., at 5c per ℔., value.. | 60.00 |

| | |
|---|---:|
| Total value of fat cattle ................ | $684.00 |
| 8 stock cows, at $25.00 each ................. | $200.00 |
| 4 two year old stock steers, at $20.00 each .... | 80.00 |
| 2 stock yearlings, at $15.00 each ............ | 30.00 |

| | |
|---|---:|
| Total value of stock cattle .............. | $310.00 |
| Total value of stock cattle ......$310.00 | |
| Total value of fat cattle ......... 684.00 | |

Total value of fat cattle and stock cattle.. $994.00

That the said defendants agreed to pay said plaintiff for said fat cattle and stock cattle the prices set opposite the above respective descriptions, but have failed to make payment of the same or any part thereof, and that said defendants are now indebted unto this plaintiff in the sum of $994.00 for said cattle, no part of which said sum has been paid, and demand therefor has been duly made and payment refused."

The defendants answered as follows:

"They admit each and every allegation contained in paragraph "II" of the said complaint, in so far as the same

has reference to what is therein designated "Stock Cat-
tle," except as hereinafter particularly denied; that is to
say, they admit that on or about the — day of June, 1899,
the defendants purchased of the plaintiff, to be delivered
at London, Chehalis county, Washington, eight stock
cows, at twenty-five dollars each, four two year old steers,
at twenty dollars each, and two yearlings, at twenty-sev-
en and fifty one hundredths dollars for the two; and they
deny each and every other allegation contained in said
paragraph 'II' of complaint; and they deny each and
every allegation in said paragraph 'II' wherein the same
has reference to fat cattle; and deny that plaintiff sold to
defendants at their request or otherwise, any of the fat cat-
tle mentioned in said paragraph 'II', the same to be deliv-
ered at the London therein mentioned; and they deny that
the fat cows therein mentioned weighed 7500 pounds,
and allege that they did not weigh to exceed 1050 pounds,
on the average, for each cow; and deny that the fat
steers therein mentioned weighed 6750 pounds, and allege
that their weight was not to exceed 1150 pounds, on the
average, each; and they deny that the fat stags therein
mentioned weighed 2900 pounds, and allege that they
did not weigh to exceed 2500 pounds for the two.

And, further answering unto the allegations contained
in said paragraph 'II', the defendants allege: That some
time prior to June, 1899, there was an agreement between
the plaintiff and defendants whereby the defendants
agreed to and did buy of plaintiff, and plaintiff agreed to
and did sell to defendants, the certain stock cattle men-
tioned in the said paragraph, such stock cattle to be deliv-
ered at London, Chehalis county, Washington, on the
scow, defendants to pay therefor the price set out in the
complaint herein, except, however, by such agreement and
sale defendants were to pay $15.00 for one of the two
stock yearlings mentioned in said paragraph, and $12.50
for the other of said yearlings, being the sum of $307.50,
for all of said stock cattle.

That, about the time and place with the purchase of
said stock cattle, these defendants agreed to purchase from
plaintiff, and plaintiff agreed to sell to defendants,

various fat cattle, some or all of which are described in said complaint, as fat cattle, and such fat cattle, by the terms of such agreement, were to be delivered to the defendants by plaintiff at Montesano, Washington, there to be received by defendants, weighed, and  paid for per pound according to such weight, at the various figures as set out in the said paragraph two of complaint, except, however, the calves therein mentioned were to be paid for at four and one-half cts. per pound, and the defendants allege that the plaintiff has never fulfilled his agreement as aforesaid with relation to said fat cattle, and has never delivered the same to defendants, nor has he ever delivered any thereof to defendants, at said Montesano, or elsewhere, except, however, one fat cow, the weight of which was one thousand and five pounds, and for which said fat cow the defendants are indebted to the plaintiff in the sum of $35.17. That the defendants have at all times been willing and able to receive the said fat cattle at said Montesano, and to pay therefor; and the defendants allege that they have received from plaintiff none of the said fat cattle, other than the aforesaid cow.

III. And, further answering unto the allegations of said paragraph 'II', the defendants admit and allege that they are indebted to the plaintiff for and on account of the aforesaid stock cattle in the sum of $307.50, and no more; that they are indebted to the plaintiff for and on account of the aforesaid fat cow in the sum of $35.17, and no other or greater sum; and the total indebtedness of the defendants to the plaintiff for and on account of the matters and things set out in said complaint, is the sum of $342.67, and no more; that heretofore the defendants have tendered to the plaintiff, in gold coin of the United States of America, in full payment of all sums due and owing to him from defendants, the sum of $345.17 and the plaintiff refused and still refuses to receive the same or any part thereof; and the defendants now bring into court, for the purpose of keeping the said tender good, the last aforesaid sum and tender the same to the plaintiff, and, in addition to the said sum, they likewise herewith bring into court and tender to the plaintiff

the sum of $6.00, in payment of his costs to this date incurred in this action; and defendants hereby offer to pay to plaintiff the aforesaid sums in full payment of all sums due and owing to the plaintiff for and on account of the matters and things herein set forth.

IV. Further answering unto the allegations contained in said paragraph 'II', these defendants allege that they are informed and believe, and therefore allege the facts to be, that during the June mentioned in the complaint herein, the plaintiff started to bring and deliver to defendants, in accordance with the agreement hereinbefore set out, certain fat cattle, being all or a part of the fat cattle mentioned in the complaint; that such fat cattle, together with said stock cattle, were placed on board a scow, at said London, with the intention of bringing them to said Montesano; that on the voyage to said Montesano the said scow capsized and all of said cattle except the one fat cow hereinbefore mentioned were drowned; that the defendants were present at such drowning; that the day after such accident, these defendants removed the hides from said stock cattle; and in the absence of the plaintiff, and for the sole purpose of saving to the plaintiff the hides of said fat cattle, and as an accommodation to plaintiff, and not otherwise, defendants removed the hides from said fat cattle so drowned; that long before the commencement of this suit, and since the commencement of this suit, defendants have tendered to plaintiff all of the hides so by them removed from said fat cattle, but plaintiff has at all times refused, and still does refuse, to receive such hides; and defendants still have such hides, and they are prepared, ready, willing, and anxious to deliver to plaintiff the said hides, at any time he will receive the same; and because of the bulk of said hides and their nature, defendants are unable to bring the same into court and make the usual tender; but tender them as aforesaid, and hereby bring them into court as aforesaid and tender them; and their tender is made because of inability to tender into court, otherwise than as hereinabove tendered, the said hides."

To the answer plaintiff replied as follows:

"Plaintiff denies that part of that paragraph two alleging an agreement to deliver any of said fat cattle at Montesano, but reaffirms the allegations of his complaint alleging that a delivery was to be made at London, in Chehalis county, Washington, and that said delivery was so made and plaintiff alleges that he has complied in all respects to his part of said agreement, and did deliver the said fat cattle and said stock cattle to the defendants at London, and as agreed upon; and plaintiff denies that he delivered any fat cow unto defendants at Montesano, and denies that said defendants have been willing and ready to pay for said fat cattle at Montesano, and further denies each and every allegation of said paragraph two controverting the allegations of plaintiff's complaint.

II. Replying to paragraph four of defendants' answer, plaintiff alleges that the agreement was: That said stock cattle and said fat cattle were to be delivered at London, in said county, and were there delivered by this plaintiff unto the said defendants, and that the said defendants then and there accepted said stock cattle and said fat cattle, and proceeded to and did load all of said cattle upon a scow, which said scow was under the hire of said defendants, and was being towed by a tug boat also employed and hired by these defendants, and said fat cattle were loaded by defendants with the intention of bringing the same to Montesano, and the said defendant, Thomas Morgan, had charge of said scow *and that said defendants carelessly and in a negligent manner overloaded said scow, for the purpose of saving freight on said cattle, which freight was to be borne and paid by said defendants; that by the careless and negligent overloading of said scow,* and while said scow loaded with the cattle was en route to Montesano, the same then and there being at a point in the Chehalis river near the poor farm in said county, *by virtue of the negligence and careless handling by defendants,* then and there capsized, and the greater portion of said cattle were then and there drowned; *but*

*that at all times from the time of delivery of said cat-
tle by this plaintiff unto the said defendants as aforesaid
said defendants had full and complete charge of all ar-
rangements of transporting said cattle from London to
Montesano, and that the loss of said cattle was due to the
negligence and carelessness of the said defendants and
not unto this plaintiff; the plaintiff called the attention
of the defendant Morgan, at London, to the fact that said
scow was over-loaded and was in a leaking and unsafe con-
dition, but that the said defendant Morgan, for the purpose
aforesaid, and being then and there in charge of said scow
loaded with cattle, and for said defendants, assumed all
risk of transporting said cattle to the Montesano market.*

That when said sale and purchase were made, as alleged
in the complaint herein, plaintiff and defendants were
unable to agree as to the weights of said fat cattle, and
that at the place of delivery, to-wit, at London, there we·
no scales by which said fat cattle could be weighed, and
that plaintiff and defendants then agreed that said cattle
should be weighed at Montesano, after said defendants
had transported them to that place; but that said cattle
were lost through *the gross negligence and carelessness of*
said defendants, who at that time had said cattle in
charge, and who accepted all of said fat cattle and said
stock cattle at London as aforesaid, there took charge of
the same, and, at their own risk and expense, undertook
to transport the same to Montesano; that plaintiff was
present at the time said scow was capsized, but that de-
fendant Morgan, for said defendants, had full charge
thereof.

Further replying to said paragraph four, plaintiff
denies that defendants, as an accommodation to plaintiff,
removed the hides of said cattle, but plaintiff avers that
if said hides were removed by said defendants, it was for
their own benefit, and was done without the knowledge of
plaintiff; and that said hides at said time were owned by
said defendants.

III. Plaintiff further denies each and every allega-
tion in said answer contained, controverting the allega-
tions of his complaint herein."

On defendants' motion, the court struck from the reply all of the italicized part, to which the plaintiff excepted. The case was tried before a jury, and the following verdict was returned:

"We, the jury, duly empaneled and sworn to try this cause, do find for the plaintiff in the sum of $345.17, being the amount tendered herein, and we do further find for the plaintiff that he is entitled to recover from the defendants the hides of the fat cattle as tendered."

The plaintiff moved for a new trial, which was over-ruled, and a judgment was entered in accordance with the findings of the jury. From this judgment this appeal is taken.

The second point raised by the appellant is that it was error for the court to strike from the reply the italicized part above set out. The answer in this case, after denying the contract alleged by the plaintiff as to the fat cattle, weight, and value, and after pleading tender of payment as to the stock cattle, raised all the issues proper to be raised under these pleadings. All that part of the answer which attempts to set up the defendants' version of the contract, and that part of the answer that sets forth that plaintiff started to bring the fat cattle to Montesano, and placed them on a scow, and they were lost, etc., was improper and raised immaterial issues. The reply thereto was likewise improper. All this should have been stricken from the pleadings. The territorial supreme court in the case of *Puget Sound Iron Co. v. Worthington,* 2 Wash. T. 472 (7 Pac. 882, 886), states the rule governing the pleadings in this kind of a case as follows:

"But the reply was, for the purposes of the action, wholly impertinent. It should have been stricken from the cause. It was no more impertinent, however, than the affirmative defense which it professed to reply to. Under our system of pleading, the technical learning of the com-

mon law pleader is of but little account. The plaintiff is required to state his cause of action with sufficient particularity to apprise the defendant of its true character. The defendant, in his answer, must deny the facts alleged in the complaint, or he must state new matter in avoidance, or by way of counter claim. If these several pleadings are not accurate and full, the party required to take the next step may have them made more definite and certain before he proceeds. With these fundamental principles kept in view, there ought to be little difficulty in framing correct pleadings.

In this case, the defendant denied all the matters averred in the complaint. His affirmative defense cannot be construed as doing more; neither the supposed affirmative defense, nor the reply to it, added anything to the issue, which was fully and completely made up when the defendant denied that it made the contract described in the complaint. It added nothing to that denial to set out affirmatively the version of the contract which defendant insisted was the true one. Seeking no affirmative relief, it made no difference what other contract it had made with plaintiff, if it had not made the one sued on."

For these reasons, we will not consider any alleged error founded upon a motion to strike portions of impertinent pleadings.

It is claimed by appellant that the court erred in admitting the testimony of witnesses Morgan, Woods, J. E. Medcalf, Keller, Sol. Medcalf, and Ninemire, as tending to show a custom existing among cattle dealers that, where cattle were sold to be weighed at Montesano, the title to the property was considered as not passing to the buyer until weighed. Morgan testified for defendants:

"Q. Tom, when there is an arrangement between the buyer and the seller as to stock,—cattle for example,— in this county, and there is an understanding that the cattle are to be weighed at a certain place, say Montesano,— what is understood by cattle buyers and sellers

as being meant by that expression, with relation to transfer of title?

Mr. Schofield: We object to the question, as it is a question of law.

Mr. Bridges: The intention is to elicit from this witness what the expression means of 'weighing'.

Q. What is understood by the expression of 'weighing at Montesano,' or any other particular place?

Judge: Proceed.

Mr. Schofield: We object to the question in that form, for the reason that general customs cannot be proven in as small a community as Montesano, and can then only be resorted to when within the knowledge of both parties. The evidence sought to be adduced is clearly incompetent, irrelevant, and immaterial, and, under the pleadings, defendants should not be permitted to attempt proof of a place of delivery by resorting to custom as to weight.

Judge: Proceed.

A. The expression 'weighed at Montesano,' or weighed at any place, means that the title to this stock—

Mr. Schofield: We object to the meaning as to the phrase forming itself into an absolute conclusion of law. It is incompetent, irrelevant, and immaterial.

Judge: Proceed. (Exception.)

A. (Continued.) That expression means in this locality, or any other locality I have ever done business, that the title to anything does not pass until they are weighed. I can give instances.

Mr. Schofield: We object to this answer and to special instances.

Judge: We think particular instances are not material."

Woods testified for defendants:

"Q. I'll ask you, Mr. Woods, what, among the cattle men, stock men, of this community, when stock is being bought and sold,—what is the meaning of the expression of 'weighing the stock' at a certain place?

Mr. Schofield: We object to the question, as a question

of law. Irrelevant and immaterial. (Overruled. Exception.)

A. Custom where I've been, persons buying cattle or persons selling cattle do not .own cattle until weighed."

J. E. Medcalf, witness on behalf of defendants:

"Q. I'll ask you, Mr. Medcalf, as between buyer and seller of cattle in this community, what is meant by the expression 'cattle are to be weighed at Montesano'?

Mr. Schofield: We object to the question. Irrelevant, immaterial. (Overruled. Exception.)

A. General condition to be delivered here; they are in my possession until weighed. That's always been the custom."

Mr. Keller, witness on behalf of defendants:

"Q. I ask you whether, as between buyer and seller in this community, what is meant by the expression, that cattle are to be weighed at a certain place?

Mr. Schofield: We object. (Overruled. Exception.)

A. What cattle I bought, I expected them to be delivered here, where they were to be weighed."

Sol. Medcalf, witness on behalf of defendants:

"Q. Mr. Medcalf, I ask you what is meant in this community, as betwen buyer and seller of stock, by the expression or understanding, that the cattle are to be weighed at a particular place,—say, Montesano?

(Question objected to by Mr. Schofield. Overruled. Exception.)

A. I'd expect them to be delivered, before they'd be mine. And they'd be mine until delivered to somebody else."

George Ninemire, one of the defendants, a witness in behalf of defendants:

"Q. I ask you, Mr. Ninemire, what, in this community, as between buyer and seller of stock,— say, cattle,— is the meaning of the expression or understanding between them that cattle are to be weighed at a place designated?

(Objected to by Mr. Schofield. Overruled. Exception.)

A. It is understood by cattle men that the cattle are to be delivered and received at a particular place before title passes. This is the custom all over the state of Washington and Oregon."

In this case an issue was raised between plaintiff and defendants by the allegation of the pleadings as to where the cattle were delivered under the contract of the parties. The plaintiff alleged that the cattle were sold and delivered to the defendants at London. The defendants denied this. The plaintiff testified that the agreement between himself and defendants was that all the cattle were to be delivered to the defendants at London, and that he did deliver them there, and he testified to circumstances tending to show an acceptance there by the defendants. The defendant Morgan, who made the contract with plaintiff on behalf of defendants, testified that the agreement was that the fat cattle were to be delivered by the plaintiff to defendants at Montesano. The fat cattle were to be weighed at Montesano; as to this there is no dispute. Here is an express agreement according to the claims of both sides, as to the place where the fat cattle were to be delivered. While one of them claimed the delivery was to be at London and the other at Montesano, yet both alike admitted that the place of delivery was a subject of express agreement between them.

"If parties make a special contract in relation to a matter which would otherwise be determined by usage, it follows that they intended to exclude the operation of the usage; since otherwise they would not make the special contract. Therefore, whenever it appears that an agreement has been made upon a particular point, and the controversy is as to the terms of that agreement, such terms cannot be shown by proof of the usage, respecting

them. In other words, the special agreement excludes usage." 27 Am. & Eng. Enc. Law, 716.

*Simmons v. Law*, 3 Keyes (42 N. Y.) 217, was an action to recover the value of a quantity of gold dust, shipped by Simmons from San Francisco to New York on Law's line of steamers, which was not delivered. An attempt was made to limit the liability of the common carrier beyond the terms of the contract in the bill of lading by proof of the usage of the trade, which was well known to the shipper, but the evidence was rejected. The court, in commenting on the question, says:

"A clear, certain and distinct contract is not subject to modification by proof of custom. Such a contract disposes of all customs and practices by its own terms, and by its terms alone is the conduct of the parties to be regulated and their liability to be determined." *Barnard v. Kellogg*, 10 Wall. 383; *Boon v. Steamboat Belfast*, 40 Ala. 184 (88 Am. Dec. 761).

It is only where a contract is silent in some particular or is ambiguous that proof of custom is admissible, and such proof is then admissible only for the purpose of finding out what the contract really was, and not to overthrow it. Proof of custom is received in such cases upon the assumption that, as to those matters not covered by express stipulations in the agreement, the parties are presumed to have made their contract with reference to the established custom and usage of that place; and these the law will incorporate into the contract, in order to explain or complete it. But it is always within the power of the parties to exclude custom from their dealings by their express agreement, as was done in this case. This precise point was decided by this court in the case of *Vollrath v. Crowe*, 9 Wash. 374 (37 Pac. 474), which was a case analogous in all respects to the present one.

That case involved the purchase price of sawlogs lost during shipment. In its opinion the court said:

"The controversy was as to whether the title had passed. The plaintiff testified that the logs were to be scaled and delivered at his mill according to the terms of the contract. The defendants contended that the logs were to be accepted according to a scale made at Priest's Point. The logs were taken from this place and were lost before reaching the mill. The plaintiff was allowed to introduce proof to show a general custom in case of a sale of logs to scale and deliver them at the mill. This testimony was objected to by the defendants, and its admission is alleged as error. We think the point is well taken. The contract was not indefinite. There was simply a controversy as to what the contract was. Both parties admitted that there was an express agreement as to where the logs were to be scaled and delivered. In such a case proof of a custom to scale at the one place or the other was inadmissible." *Swadling v. Barneson,* 21 Wash. 699 (59 Pac. 506).

An examination of the testimony admitted to establish an alleged custom to weigh cattle at Montesano shows that it amounts only to the opinion of the witnesses and is not proof of any such custom. For instance, the witness Morgan says, in substance, " 'weighed at Montesano' means that title does not pass until the cattle are weighed." Woods' testimony, in substance, is that persons selling cattle have not parted with title until they are weighed. J. E. Medcalf's testimony, in substance, is that the cattle were in possession of the seller until weighed. Keller's testimony is substantially that they were not delivered until weighed. Ninemire's testimony, in substance, is that cattle were to be weighed before delivery was completed.

"Usage being a fact, and to be proved as a fact, it follows that the existence of a usage cannot be established by the mere opinions of witnesses as to what the law is,

as applied to the case in hand. It often happens that what is supposed to be a usage of trade is merely the general opinion of persons as to their rights and liabilities under certain facts; such opinion cannot constitute a usage. * * * It must be a method of dealing with certain facts and not a conclusion as to the rules of law pertaining to those facts." 27 Am. & Eng. Enc. Law, 736.

See, also, *Cox v. O'Riley,* 58 Am. Dec. 633; *Southwestern Freight & Cotton Press Co. v. Stanard,* 100 Am. Dec. 255.

The testimony of these witnesses was all illegal, and, no doubt, going as it did to the very question of delivery, prejudiced the case against the appellant.

One of the instructions given by the court to the jury was as follows:

"The plaintiff cannot recover unless he prove that the cattle were not only delivered to the defendants at London, but that at the time of such delivery the title thereto vested in the defendants. In other words, the plaintiff cannot recover in this action unless and until he proves to the satisfaction of the jury, that the defendants had become the absolute owners of the said cattle at London."

The foregoing was an unfair statement of the law as applicable to the case. If the plaintiff proved an absolute delivery, he proved a transfer of title; but here the court led the jury to believe that something more was required,—that the plaintiff must prove that the title vested. Whether or not the title vested was a legal conclusion to be drawn from the facts proved. If there had been a complete delivery, there was a vesting of title, and plaintiff could prove no more; yet the court told the jury, in effect, that no delivery would suffice, but more must be proved. The jury, in considering the illegal evidence to which we have referred, in connection with this instruction, could not well have rendered any other verdict than the one it did render.

According to the contention of the appellant, the fat cattle were sold and delivered at London, and were then placed under the control of respondents. If that was a fact, the sale was complete, and weighing was not necessary to pass title. The jury might well infer from this instruction, in view of the illegal testimony of Morgan, Medcalf, and others, as to the custom of weighing at Montesano, that the title did not pass when the cattle were delivered to respondents at London. It is manifest that, in giving this instruction, the trial court acted upon the assumption that, since the cattle were to be weighed at Montesano, the title had not passed at the time of the loss. The court applied the rule that the title to property does not pass by sale "if some act remains to be done in relation to it." But that rule applies only to cases of constructive delivery and does not apply to a case where the property has been actually delivered to the purchaser and nothing remains to be done by the seller. *Bogy v. Rhodes,* 4 G. Greene, 133.

"Where the goods are delivered with the intention of passing title and the sale is absolute and complete, the title passes to the vendee, although the weight or measure of the article sold remains yet to be ascertained." 21 Am. & Eng. Enc. Law, 635.

See, also, *Riddle v. Varnum,* 20 Pick. 280; *Leonard v. Davis,* 1 Black, 476; *Adams Mining Co. v. Senter,* 26 Mich. 73; *Osborn v. South Shore Lumber Co.,* 91 Wis. 526 (65 N. W. 184); *Burke v. Shannon* (Ky.), 43 S. W. 223.

There is a conflict in the legitimate testimony as to where the fat cattle should have been delivered. If this had been the only error complained of, the court's ruling would not be disturbed, but manifest error was committed in admitting the testimony of Morgan, Woods, J. E. Medcalf, Keller, Sol. Medcalf, and Ninemire, in the partic-

ulars heretofore pointed out, and in giving the instructions heretofore mentioned; and for these reasons the judgment of the court below should be, and the same is, reversed, and this cause is remanded to the court below for a new trial; the appellant to recover his costs on this appeal.

DUNBAR, C. J., and FULLERTON and REAVIS, JJ., concur.