[No. 24866.   Department One.   February 15, 1934.]

WASHINGTON BRICK, LIME & SEWER PIPE COMPANY,
*Appellant,* v. EIVIND ANDERSON, *Respondent.*[1]

*Lund & Dodds,* for appellant.
*Henry Arnold Peterson,* for respondent.

STEINERT, J.—In its complaint containing three causes of action, plaintiff sought to recover for quantities of building material furnished and delivered by it to defendant. The answer of the defendant contained certain denials; then, by way of an affirmative defense, pleaded an offset and counterclaim, and concluded with a cross-complaint setting forth a series of

[1]Reported in 29 P. (2d) 690.

five separate causes of action against the plaintiff. Trial was had before a jury. A verdict having been returned in favor of defendant, judgment was entered thereon, from which plaintiff has appealed.

The respondent, in 1930, entered into a contract with the Federal government for the construction of the United States immigration and assay office at Seattle. The construction necessitated the use of certain architectural terra cotta, interior tile and brick. Appellant, a manufacturer of such materials, entered into a series of contracts with respondent for the manufacture and delivery to the latter of certain specified supplies for use on the job. A statement of the issues, as made by the pleadings, will contribute toward a better understanding of the questions presented by this appeal.

First, with reference to the complaint: The first cause of action was for the recovery of a balance of $401.50 for architectural terra cotta delivered under a written contract. The second cause of action was for the recovery of $2,719.05, the balance claimed to be owing for salt-glazed tile and slip-glazed tile furnished under two written contracts, and for the further sum of $816.70, the reasonable value of additional salt-glazed tile which was necessary on account of certain breakage attributable to respondent's negligence. The third cause of action was to recover a balance of $1,917.45 for a quantity of brick sold and delivered to respondent at his special instance and request. The total of appellant's claims amounted to $5,854.70.

Respondent admitted the execution of the various written contracts referred to in the first and second causes of action of the complaint, but denied that the material had been delivered according to specifications. He further denied the delivery of the additional salt-glazed tile for which a recovery of $816.70 was sought.

As to the third cause of action, respondent admitted receiving a portion of the brick, but denied in its entirety any valid claim therefor. Then followed, in the answer, a series of six affirmative defenses, the first being in the nature of an offset and counterclaim, and the others being pleaded by way of cross-complaint.

In the first affirmative defense, respondent demanded that he be allowed an offset of $401.50 against appellant's first cause of action, because the material therein described did not comply with the specifications of the contract, but were of defective quality. In the second affirmative defense, made a cross-complaint, respondent demanded $850 for expense incurred by reason of delay in delivery and for rehandling the material. In the third affirmative defense, pleaded as a cross-complaint, respondent sought to recover an aggregate sum of $3,154.60 for faulty material, irregular deliveries, expense of recutting a portion of the tile and loss of time. In the fourth affirmative defense, incorporated in a cross-complaint, respondent sought to recover the sum of $480 for other expenses incurred by reason of delay in delivery of a portion of the material.

The fifth affirmative defense and cross-complaint has a very important bearing upon the main question presented here. Respondent sought therein to recover the sum of $2,324.75, which he claimed represented the impaired efficiency of the crew in the performance of their work, occasioned (1) by the delivery of irregular-shaped and faulty material, (2) by delay and irregularity in deliveries of material, and (3) by the failure of appellant to furnish *setting or construction plans* showing where the various pieces of tile were to be placed in the progress of construction. Whether appellant was obligated to furnish such plans, was a vital

question in the case, and underlay the scope and validity of the verdict.

The sixth and final affirmative defense, also characterized as a cross-complaint, claimed a loss of $600, interest upon a stagnated investment because of delay in the completion of construction. The total of respondent's claims amounted to $7,810.85. In its reply, appellant denied the various claims of respondent.

The jury returned a verdict for respondent in a lump sum of $453.50. The form of the verdict affords no clue as to how the jury arrived at the final result, nor does it indicate how the jury disposed of the respective contentions with respect to the specific claims. We have simply a single, comprehensive result, without mathematical segregation.

The ramified questions of fact suggested by the foregoing outline of the issues furnished a lengthy trial and an extensive record, the result of which is now before us. The assignments of error, however, present but three questions, which we now proceed to examine.

■ The trial court gave instruction No. 10½, as follows:

"Defendant claims that plaintiff should have furnished what is known as a *setting or construction plan* with the tile to aid in the proper laying of the tile and particularly the special pieces thereof. While the tile contract in question between the parties does not specifically require the furnishing of any such plan, yet if you find from the evidence that the custom and practice of the trade required that a *setting or construction plan* be furnished with such tile then I instruct you that such plan should have been furnished by the plaintiff." (Italics ours.)

The giving of this instruction is assigned as the first and principal error.

A setting or construction plan consists of a drawing or plan showing the location for each piece of tile in

the building, according to corresponding numbers. To have prepared such a plan would have cost, as the evidence discloses, approximately eight thousand dollars. As the instruction itself indicates, the contract did not specifically require the appellant to furnish such plan. Further, the contract contained an express provision to the effect that it was complete in itself, and that the obligations incurred therein by the parties should not be added to or modified by any other provision, in writing or otherwise.

The respondent sought to establish a usage or custom of trade requiring the manufacturer to accompany the delivery of such material with a setting plan. Respondent's evidence, however, did not meet the requirements of the pertinent rules upon the subject. Several witnesses, testifying from the standpoint of contractors, stated that such plans would have very practical value and would greatly assist the contractor in expediting the work of construction; that, under ordinary and reasonably good practice, the material should be accompanied by a setting plan. Other witnesses, testifying as experts, stated that they would, in their own cases, have required such plans, and that they believed that the manufacturer should supply them, because of their assistance to the contractor.

One witness, a foreman on the job, testified that he had worked in a tile factory in Los Angeles, which, however, did not manufacture salt-glazed tile; that he had made setting plans for iron, wood and brick work, but not for salt-glazed tile. In response to a question as to how a plan for laying tile could have been made in the present instance, he said:

"That is a matter for the manufacturer to do, and they all do it, some in one way and some another. His idea, manufacturing the article, is entirely up to him, so that he can make a profit. He does it in the most economical way he can."

The same witness later testified that the appellant had sent a plan showing the different shapes and how the tile had been made in the factory, but that such plan did not disclose where the pieces of tile were to be placed.

It may be conceded that a setting or construction plan would, in the present instance, have been very useful to the respondent. But his evidence fell far short of establishing any custom of the trade requiring the manufacturer to furnish such plan under a contract for the sale and delivery of building material. To establish a custom tacitly attending the obligations of a contract, it must be shown to be uniformly prevalent and universally observed, so that it may be said that the contracting parties either had such custom in mind or else must be presumed to have had it in mind, and consequently to have contracted with reference to it. Furthermore, the evidence to establish custom must be clear and convincing, free from ambiguity, uncertainty or variability. It must be positively established as a fact, and not left to be drawn as an inference from isolated transactions. *Jarecki Mfg. Co. v. Merriam*, 104 Kan. 646, 180 Pac. 224; *Hopper v. Sage*, 112 N. Y. 530, 20 N. E. 350, 8 Am. St. 771; *Scudder v. Bradbury*, 106 Mass. 422; *Continental Coal Co. v. Birdsall*, 108 Fed. 882; 4 Wigmore on Evidence, § 1954; 27 R. C. L. 197.

Our decisions, in so far as they touch upon the subject, are in line with these rules. *Johns v. Jaycox*, 67 Wash. 403, 121 Pac. 854, Ann. Cas. 1913D, 471, 39 L. R. A. (N. S.) 1151; *Wilkins v. Kessinger*, 90 Wash. 447, 156 Pac. 389.

The appellant objected to the admission of the evidence adduced to establish custom. It also moved to have the respondent's claim which was based on such evidence withdrawn from the jury. The court ruled adversely to appellant. Inasmuch as the evidence was

not sufficient to prove a custom, the instruction related to a matter that was not properly an issue for the jury's consideration. The instruction was therefore prejudicial.

Respondent contends that, in any event, the instruction became immaterial, because appellant subsequently offered evidence that it had supplied the necessary setting plans. The plans which appellant did supply were those that it had prepared for its own convenience in manufacturing the tile, and which it furnished to the contractor merely as an accommodation. It was not contended by appellant that the plans which it actually supplied were of the kind or nature that respondent was demanding.

It is true that appellant, upon the insistent demands of respondent, did set about preparing complete setting plans, such as respondent desired, but desisted therefrom when it became satisfied that it was not obligated to do so under its contract. But that did not prevent appellant from resting upon its defense, nor did it relieve respondent of the necessity of proving the custom upon which he relied.

Since we have no way of determining how much, if anything, the jury allowed for the failure to supply setting plans, and since the verdict is for a lump sum upon respondent's various claims set forth in his cross-complaint, the entire verdict must fall and the judgment must be reversed.

Appellant's second assignment of error involves a question that is disposed of under the first assignment. It need not, therefore, be further noticed.

Inasmuch as the cause must go back for a new trial, it is necessary to dispose of one other question. Appellant requested the court to instruct the jury that, even though it found that respondent had not ordered certain special-faced brick, included in appellant's

third cause of action, yet if it found that such brick was actually delivered and used in the construction, then its verdict must be for appellant in the amount of the agreed cost thereof. The contract with reference to such brick provided that they should be acceptable to the supervising architect. The proposed instruction was lacking in that element. The court, however, did give an instruction upon the particular issue, and in terms as favorable to appellant as the evidence warranted. We think that there is no merit in this assignment.

For the error discussed under the first assignment, the judgment is reversed, and a new trial ordered.

BEALS, C. J., MAIN, MITCHELL, and MILLARD, JJ., concur.