[No. 1122-3.   Division Three.   July 16, 1975.]

HARLAN D. DOUGLASS *et al, Respondents,* v. GEORGE STA-CHECKI *et al, Appellants.*

*Edward E. Shaw,* for appellants.

*Joseph P. Delay* and *Delay, Curran & Boling,* for respondents.

GREEN, J.—Plaintiff-lessor commenced this action seeking cancellation of a lease agreement or, in the alternative, an order permanently enjoining the sale of certain items by the defendant-lessee. After a trial to the court, an order was entered permanently enjoining the defendant from selling some 14 types of food items for the balance of the lease term ending May 31, 1977;[1] and awarding costs and attorney's fees to plaintiff. Defendant appeals.

The plaintiff is a building contractor who has been in the business of constructing and leasing buildings for approximately 16 years. The defendant has been in the meat business for some 25 years. In June 1972, the defendant leased a corner area in a small four-store shopping center owned by

___

[1]The items enjoined are: Milk, Bread, Hamburger and Hot Dog Buns, Salads and Pickles, Olives, Cookies, Cheese Dips, Eggs, Cheese and Cracker Snacks, Yogurt, Sour Cream, Whip Cream, Potato Chips and similar snack items, Butter and butter substitutes.

the plaintiff. The lease contains the following business purpose clause:

> The premises are to be used for the purpose of conducting therein [a] Meat shop and for no other business or purpose, without the written consent of Lessor.

In August 1972, defendant opened his shop under the name "Angus Meats and Delicatessen" and since sold meats and allegedly meat-related or complementary food items.[2]

On October 17, 1972, plaintiff informed defendant by letter that its sale of bread and milk was prohibited by the terms of their lease and jeopardized plaintiff's lease with the owners of a Seven-Eleven Store which occupies the opposite corner of the shopping center. The Seven-Eleven lease prohibits plaintiff from leasing another portion of the building to a competing business. Plaintiff requested that defendant discontinue the sale of bread and milk.

On October 25, 1972, defendant's attorney notified plaintiff by letter that defendant would continue to sell milk and bread, stating:

> It is the general feeling of those that I have discussed this matter with that in the common trade of meat there are certain complimentary [sic] items that as a matter of custom and useage [sic] have been sold in connection

---

[2]Exhibit 4, prepared by defendant, lists the following food items sold in his shop at the time of trial: "Fresh Meats; Frozen Meats, Fish, Poultry. Deli Items: Luncheon Meats & Cheeses, bulk in service case; Salads & Pickels [sic] in service case; Self Service items; Cheeses Refrigerated & Non-refrigerated-Imported; Lunch Meats; Cheese Balls & Fondues; Mustards; Pickels [sic]—Buddig Dills refrigerated; Bar-B-Q sauces; Meat marinates [sic] & spices (limited for meats); Oysters; Herring; Olives-Fancy Imported; Horseradishes-Beaver Brand; Shrimp Cocktail; Crab; Pepperidge Farms-Herb Stuffing; Pepperidge Farms-Specialty Cookies; Brown n'Bags for Turkeys; Hamburger Helper; Reese's Smoked Shrimps, oysters, squid, octopus, mushrooms, Caviar; Mint Jelly for Leg O'Lamb; Cheese Dips; Canned Hams, Saurkraut [sic] refrigerated-nonrefrigerated; Pizzas-Homemade; Eggs, Tortillas; Lefse, Taco Shells (Reese's); Chips, Crackers; Cheese n'Cracker snacks; Butter; Imperial; Cottage Cheese; Yogurt; Sour Cream; Whip Cream; Ricotta; Pigs Feet; Diet Cheese; Bread—Wonder Rye and White; Hamburger Buns; Hot Dog Buns; Shake n'Bake (Pork—Chicken—Hamburger only)."

with and to complement the sale of meats in the meat trade. . . .

. . . I have discussed this with other butchers and people familiar with the meat business and it is their feeling that the term "meat shop" would include, and does by custom include such items as bread, milk, cheese, etc.

On November 6, 1972, plaintiff's attorney informed the defendant that legal action would be taken unless the defendant immediately refrained from selling bread and milk in competition with the Seven-Eleven Store. Thereafter, this action was commenced.

At trial defendant introduced expert testimony tending to establish by "custom and usage" that the sale of bread and milk and other complementary items is within the scope of the term "meat shop." Plaintiff objected to the introduction of such testimony, arguing that the parol evidence rule bars evidence of custom and usage to explain the term "meat shop" which is unambiguous and clearly restricts the purpose as well as the type of business to be conducted under the lease. The trial court allowed such testimony but subsequently refused to consider it in rendering its decision, stating:

[I]n order to admit parol evidence of a peculiar meaning within a given industry of a certain term employed by parties to a contract, it is necessary to show that the parties had knowledge of that meaning, or that a party, as a member of the trade or business group to which the contract relates, would be reasonably charged with such knowledge. In the case here, I question that such knowledge could be imputed to the plaintiff, and I question that the term, "meat shop" is inexplicable without the use of such evidence.

The propriety of the trial court's refusal to consider evidence of custom and usage to explain the meaning of the term "meat shop" presents the overriding issue on appeal.

The defendant's basic contention is that the term "meat shop" is ambiguous because it is capable of conveying a variety of meanings; therefore, parol evidence should have

been considered to explain the ambiguity. We agree. For example, *Webster's Third New International Dictionary* (1969) defines "meat" primarily as "something eaten by man or beast for nourishment: Food." The word "meat" has been given a legal definition in its broadest sense encompassing all provisions or foods fit for human consumption. *See Gardner v. State*, 183 Ind. 101, 108 N.E. 230 (1915); 26A Words and Phrases, *Meat*, 575 (1953). The term in its narrowest sense has been limited to the flesh of cattle, swine, sheep or goats. *See State v. Nugent*, 243 N.C. 100, 89 S.E.2d 781, 784 (1955); *Wilson v. State*, 164 Tex. Crim. 233, 297 S.W.2d 830, 831 (1956). In view of the foregoing, we find the term "meat shop" is subject to a variety of interpretations and therefore ambiguous.

■ It is clear that where words in a contract are ambiguous, parol evidence is admissible to explain their meaning. *Stender v. Twin City Foods, Inc.*, 82 Wn.2d 250, 255-56, 510 P.2d 221 (1973); *Perkins v. Brown*, 179 Wash. 597, 38 P.2d 253, 101 A.L.R. 275 (1934); *Florence Fish Co. v. Everett Packing Co.*, 111 Wash. 1, 188 P. 792 (1920); *Schultz v. Simmons Fur Co.*, 46 Wash. 555, 90 P. 917 (1907); *Williams v. Ninemire*, 23 Wash. 393, 63 P. 534 (1900); *Sons of Norway v. Boomer*, 10 Wn. App. 618, 622, 519 P.2d 28 (1974). Very early, our court in *Williams v. Ninemire, supra*, at page 405, said:

> [W]here a contract . . . is ambiguous . . . proof of custom is admissible, . . . Proof of custom is received in such cases upon the assumption that, as to those matters not covered by express stipulations in the agreement, the parties are presumed to have made their contract with reference to the established custom and usage of that place; and these the law will incorporate into the contract, in order to explain or complete it.

Thus, the trial court erred when it declined to consider parol evidence of custom and usage to explain the intended meaning of the term "meat shop."

Plaintiff argues that because defendant failed to show that the parties had knowledge of the customary use or

meaning of the term "meat shop" and contracted with reference to it, the court correctly refused to consider defendant's evidence of custom and usage. We disagree. Prerequisite to the admission of such evidence is a determination that the parties had actual or *presumed* knowledge of the customary meaning of the term as used in the trade and contracted with reference to it. *Washington Brick, Lime & Sewer Pipe Co. v. Anderson*, 176 Wash. 416, 421, 29 P.2d 690 (1934); *Bowman v. First Nat'l Bank*, 9 Wash. 614, 618, 38 P. 211 (1894); *Codd v. Westchester Fire Ins. Co.*, 14 Wn.2d 600, 610, 128 P.2d 968, 151 A.L.R. 316 (1942); 5 S. Williston, *A Treatise on the Law of Contracts* § 660 (3d ed. W. Jaeger 1961); 21 Am. Jur. 2d *Customs and Usages* § 5 (1965). In *Bowman v. First Nat'l Bank, supra* at 618, the court noted the rule applicable to the present case:

> If . . . a general custom, the *parties are presumed to have dealt with reference thereto*, and in order to correctly interpret their intentions the court or jury should be put in possession of the custom in the light of which they transacted their business.

(Italics ours.) Here, the evidence relates to the kind and variety of items generally sold in a meat shop. Thus, the parties are presumed to have contracted with reference to such general meaning.

Furthermore, plaintiff has been a building contractor and lessor for over 16 years. Prior to the defendant's lease, plaintiff entered into a lease with a Seven-Eleven Store in the same shopping center, which limited its business purposes to a "specialty items" grocery store. Plaintiff prepared the lease with the defendant, limiting its business purposes to a "meat shop." In these circumstances, plaintiff should not now be heard to deny that he contracted with reference to the customary scope of the term.

Neither do we find merit to the plaintiff's contention that defendant's failure to plead custom and usage as an affirmative defense renders evidence thereof inadmissible. In *Ryder-Gougar Co. v. Garretson*, 53 Wash. 71, 75, 101 P. 498 (1909), the court said:

We understand the rule to be that a general usage or custom need not be pleaded in order to admit evidence thereof to throw light upon a contract, the terms of which are obscure, and which is dependent upon evidence of such general custom to make it plain.

*See also Codd v. Westchester Fire Ins. Co., supra* at 613: 21 Am. Jur. 2d *Customs and Usages* § 31 (1965).[3]

For the foregoing reasons, this case is remanded to the trial court with direction to reconsider its previous determination in light of the excluded evidence of custom and usage, and to determine the reasonable amount of attorney's fees to be allowed plaintiff on appeal, if any.

McINTURFF, C.J., and MUNSON, J., concur.

Petition for rehearing denied August 7, 1975.

Review denied by Supreme Court October 7, 1975.

---

[3]None of the authorities relied upon by plaintiff involve the admission of evidence as to custom and usage to explain ambiguous terms and are therefore distinguishable. These cases are: *Fritts v. McKay*, 58 Wn.2d 413, 363 P.2d 808 (1961) (Plaintiffs sought to introduce evidence of custom and usage in reference to an agent's authority to make certain representations.); *Redmon v. Andrews*, 147 Wash. 390, 266 P. 178 (1928) (Plaintiff attempted to introduce evidence that in the automobile trade, delivery of a car under a conditional sales contract is recognized as a sale.); *Wilkins v. Kessinger*, 90 Wash. 447, 156 P. 389 (1916) (Plaintiff sought to introduce evidence as to how two brokers customarily divide the commission for a real estate sale. There was no express agreement to construe.) Further, CR 8(c) does not apply because the evidence is not admitted to establish an affirmative defense to enforcement of the contract, but only to explain the meaning of an ambiguous term of the contract.