COATES, ADM'X, v. THE BURLINGTON, CEDAR RAPIDS & NORTHERN R'Y CO.

1. **Evidence:** WITNESS SHOULD STATE FACTS, NOT OPINIONS. The opinions of a witness as to whether or not, when a train of cars was in motion, a person could go between the cars and uncouple them, and at the same time see whether a frog in the track was blocked, must have been a conclusion drawn from a complication of circumstances, and should not have been admitted in evidence in this case. The witness should have been asked for the facts. It was for the jury to draw their own conclusions from them.

2. **Railroads:** CUSTOM TO BLOCK FROGS: NEGLIGENCE: EVIDENCE. Where the negligence complained of was that defendant had failed to block a frog in its track, it was proper to allow plaintiff to prove (without averring it in his petition) an order and custom on the part of defendant to block all frogs along its lines, for the purpose of showing an admission that frogs unprotected are dangerous to employes.

3. ———: DEATH THROUGH NEGLIGENCE: LIFE TABLES AS EVIDENCE. The standard tables, showing the life expectancy of people of different ages, have been too long conceded to be competent evidence in cases of permanent personal injuries to railway operatives to be even questioned.

4. **Instructions:** ASSUMPTION OF CONCESSION NOT MADE. Where the negligence complained of was the dangerous condition of a frog, and defendant averred in its answer that the deceased "could well have known of its location and construction, and the dangers thereof, if any such dangers existed in fact," this was not a confession and avoidance of the dangerous condition of the frog, and an instruction based upon the theory that it was was erroneous.

5. **Railroads:** INJURY TO EMPLOYE: EMPLOYE'S KNOWLEDGE OF THE DANGER: BURDEN OF PROOF. In an action for personal injury through the negligence of a railway company, after the defendant has shown that the plaintiff knew of the dangerous condition of the road or machinery which he aided to operate, it is then incumbent on the plaintiff to show that he was in some manner justifiable in exposing himself to the danger, before he can recover. And the rule is not different when the injury results in death, and the action is brought by the administrator.

6. ———: PERSONAL INJURY: MEASURE OF DAMAGES: INSTRUCTIONS TOO GENERAL. In such case an instruction to the jury that "the measure of damages will be such sum, not to exceed the amount claimed, as they may find from the testimony in the case will compensate for the loss sustained by the injuries, taking into consideration all the testimony having a bearing thereon," was not sufficiently explicit. For the elements of damage in such a case, see *Donaldson v. Railroad Co.*, 18 Iowa, 280.

*Appeal from Linn Circuit Court.*

THURSDAY, DECEMBER·13.

THE plaintiff is the widow of J. Q. Coates, deceased, and the administratrix of his estate, and she seeks to recover damages for injuries resulting in the death of the deceased, from being caught in a frog and run over by .one of defendant's trains, while engaged in coupling cars at Vinton, in this state.

There was a trial by jury, which resulted in a verdict and judgment for plaintiff for $5,000.    Defendant appeals.

*J. & S. K. Tracy*, for appellant.

*Mills & Keeler*, for appellee.

ROTHROCK, J.—I. The deceased was about twenty-five years of age, and had three or four years' experience on railroads as a brakeman and switchman.    He had been in the employment of defendant as a brakeman on freight trains for about two months previous to his death.    At the time of the accident he·was assisting in making up a freight train at Vinton.    In performing this service, he was on top of the cars, and was directed to cut off two cars from the train. He descended from the cars and signaled the engineer to back up.    The signal was obeyed, and the train was backed very slowly.    Immediately upon giving the signal, Coates stepped between the cars to pull the pin.    He made one or two steps along with the moving train, when his foot was caught and fastened in the angle of a frog in the track, and he was run over, receiving injuries from which he died in a few hours.

It is not and cannot be claimed that any employe of the defendant was negligent in directing deceased to uncouple the cars, as to the time and manner of directions given to him, nor that there was any negligence upon the part of the engineer.    The evidence was undisputed that the train was

backed very slowly, and that deceased took but a step or two after he went between the cars, when he was caught in the angle of the frog. The train was stopped so suddenly that only one pair of trucks passed over him.

About fifteen days before the injury, the defendant had put in a temporary spur track east of the switching yard at Vinton, for the purpose of moving earth to fill in a short piece of track. This spur track was not used for regular trains or cars, but simply for short dump cars hauled by horses. It was connected with the main track by the frog in which deceased caught his foot and was injured.

It is averred in the petition that the "defendant negligently constructed the same, (the spur track,) and negligently omitted to put blocks in the frogs at the intersection of the rails of said main and side track, or provide other safeguards between said rails, in the frog, or crotch, or intersection, at or near said switch, and whereby the employes of defendant using said track were wrongfully exposed to great danger and hazard."

The defendant in its answer denied the averment of negligence, and averred that "decedent was guilty of contributory negligence and want of proper care and caution at the time, in so carelessly walking upon said track as to get his foot fastened in the frog therein; that deceased knew of the existence of said frog, its location and the manner of its construction, and made no objection thereto, and was promised no change therein; that he was an experienced brakeman, and had often worked about this frog and track, and by the exercise of reasonable care and caution could well have known of its location and construction, and the dangers thereof, if any such dangers existed in fact, and yet made no complaint, and no promise of change was made therein, and wherefore defendant asks judgment for costs."

The plaintiff introduced a witness who was a brakeman, and he was examined as follows:

"Ques. Now, in the practice of uncoupling cars, what

**1. EVIDENCE: witness should state facts, not opinions.** danger is there, if any, from frogs? What danger is there to brakemen in moving along the track? What danger is there from frogs in moving along the track uncoupling?" (Objected to as incompetent.)

Ans. "They are very dangerous if you get your foot into them."

Another witness was asked this question:

Q. "Provided two cars were together, and a person between the cars in motion, uncoupling, could he uncouple the cars, and at the same time see whether or not there was a frog upon the track at that place?"

A. "He could not when the train was in motion."

Q. "If a person were between two box freight cars moving while he was uncoupling the cars, could he tell whether a particular frog along the track was blocked or not blocked?"

A. "Well, that would depend upon circumstances altogether, the speed the train was going, and how much time he had to look around."

Q. "Well, in the act of uncoupling cars?"

A. "Well, no, sir. If a train was in motion, and a man was not looking for that frog, he couldn't see it if he went in to uncouple cars."

The questions above set out were objected to as incompetent, and in regard to those asked of the last witness the ground of incompetency was that they called for an opinion of the witness. The objections were overruled, and the defendant objected, and assigns the rulings as error.

There is some doubt in our minds as to whether the objection to the first above question was sufficient, in that it did not state that the question called for an opinion. The objections to the questions propounded to the other witness were sufficiently explicit, and in our opinion they should have been sustained. They call for an opinion of the witness as to whether or not, when the train was in motion, a person could go between the cars and uncouple them, and at the

same time see whether a frog in the track was blocked. This is not a fact. It is an opinion of the witness based upon a complication of circumstances. It involves the questions as to the distance between the cars, the movement of the train and the attention of the party making the coupling to the act in which he was engaged. It will be observed that it is not a mere inquiry whether a particular object can be seen from a given position. The answers to the question impliedly concede that it is not physically impossible to stand or walk between two box cars coupled together, and at the same time see a frog in the track; but whether seen or not would depend on circumstances altogether—"the speed the train was going, and how much time he had to look around." These circumstances were proper facts to present to the jury, but to group them together and allow a witness to give his opinion or conclusion upon them was, in our opinion, clearly erroneous. It was a question for the jury to determine from all the facts whether the deceased, in the exercise of proper diligence, could or should have seen the frog and avoided the injury. *Hamilton v. R. R. Co.*, 36 Iowa, 31; *Belair v. R. R. Co.*, 43 Id., 662; *McKean v. R. R. Co.*, 55 Id., 192; *Allen v. R. R. Co.*, 57 Id., 623.

II. The plaintiff, among other things, proved an order and custom of the defendant to block all frogs along the line 2. RAILROADS: of its road. This evidence was objected to, and custom to block frogs: it was urged that the same was incompetent, benegligence: evidence. cause no such custom or order was pleaded, and that the omission or observance of the order was not in issue.

We think the evidence was not incompetent. There was an issue to which it was applicable. The negligence complained of was the failure to block the frog, or provide other safeguards at the angle in the frog. To aver that the defendant by an order had required all frogs to be blocked, and that the order was not observed as to this particular frog, would have been merely pleading evidence tending to show

negligence. The existence of a general order of this char acter was important only as a circumstance in the nature of an admission that, without some protection, frogs are danger- ous to employes whose duty requires them to go upon the track in close contact with moving trains. It will be under stood that, while we hold this evidence as competent, we dc not determine that the failure to block this particular frog was negligence. It was a proper fact to be taken into con sideration by the jury in connection with the other facts in the case, such as that the frog was placed there for a tempor- ary purpose, its location with reference to the switching yard, and other facts disclosed in evidence.

III. The plaintiff introduced certain life tables, showing the probable duration of the life of a person of decedent's age. The evidence was objected to by the defendant. It is conceded that the tables introduced in evidence are the standard in common use in this country, but it is objected that they are not competent evidence as to the probable duration of the life of a person engaged in extra hazardous and dangerous vocations.

*3. ——: death through neg- ligence: life tables as evi- dence.*

We think this evidence, in cases of permanent personal injuries to railway operatives, has been too long conceded to be competent and proper to be now questioned.

IV. The court gave to the jury the following instruc- tion, at plaintiff's request:

"2. Defendant claims that said Coates was an experienced brakeman, and actually knew, or by the exercise of ordin- ary care could have known, that the frog where he received his injury was not blocked, and was in a dangerous condition, and that, by remaining in defendant's employment thereafter, without protest, or promise of amendment of the defect, he assumed such risk, and waived any right to recover for injuries caused thereby. Upon this question the jury are instructed that said Coates, by entering into and remaining in defendant's service, assumed only the ordinary risks directly connected with his

*4. INSTRUC- TIONS: as- sumption of concession not made.*

immediate employment as a brakeman, and did not assume any risk or dangers resulting from a defective and dangerous track, or frog, unless prior to the time of his injury he actually knew, or by the use of reasonable and ordinary care, under all the circumstances, should have known, that the particular frog where he was injured was in a defective and dangerous condition, and thereafter remained in defendant's employment, using such track and frog without objection, or promise of amendment of such defect."

This instruction is complained of, because it assumes that the defendant conceded that the frog was in a dangerous condition. We think the objection is well taken. Appellee claims that the defendant pleaded a confession and avoidance by averring that the deceased knew, or by the exercise of ordinary care might have known, of the condition of the frog, and that he made no objection thereto, and was promised no change therein, whereby he assumed the risk. By an examination of the averments of the answer, it will be seen that the defendant does not admit that the frog was in a dangerous condition. It is therein stated that the deceased "could well have known of its location and construction, *and the dangers thereto, if any such dangers existed in fact.*" We know of no rule of pleading which would have required the defendant to admit that the frog was in a dangerous condition, in order to avail itself of the defense that deceased knew of its actual condition and made no complaint thereof.

V. The court further instructed the jury to the effect that, if deceased had knowledge of the condition of the frog, and continued in the employment of the defendant, and made no complaint thereof, and was not promised a change, there could be no recovery, and that the burden of proving the same is on the defendant.

5. RAILROADS: injury to employe: employe's knowledge of danger: burden of proof.

It is urged that this instruction was erroneous, because it not only required the defendant to prove that the deceased

had knowledge of the defect, but also to prove that he did not make complaint thereof and was not promised a change therein. In *Wells v. R. R. Co.*, 56 Iowa, 520, it is held that the burden rested upon the defendant to prove the affirmative allegation of the defense, to the effect that the plaintiff had knowledge of the alleged danger to which he was exposed.

We think that, when the defendant has shown that fact, it may well rest upon it as a defense, and that, in the absence of some excuse from the plaintiff for exposing himself to dangers known to him, there can be no recovery. It is a general rule (subject of course to some exceptions) that a party to an action is not required to establish the negative of a proposition. When the defendant shows that the plaintiff knew of the dangerous condition of the road or machinery which he aided to operate, it is then incumbent on, the plaintiff to show that he was in some manner justifiable in exposing himself to the danger. The fact that such proof cannot be made in some cases where the injury results in death, is no reason why the rule, that the party who holds the affirmative of an issue is required to assume the burden of proof, should not be enforced. If the burden had been held to rest on the defendant to prove the negative, it would have been required to introduce as witnesses all of its officers and employes to whom such notice might properly be given, and prove by them that no complaint was made.

VI. The court further instructed the jury as follows:

"9. If you find for the plaintiff, the measure of damages will be such a sum, not to exceed the amount claimed, as you find from the testimony in the case will compensate for the loss sustained by the injuries, taking into consideration all the testimony before you having a bearing thereon."

*6. ——: personal injury: measure of damages: instruction too general.*

This instruction should have been more explicit in defining the measure of damages to which the plaintiff was entitled, if any. For the elements of damages properly

entering into cases of this character, see *Donaldson v. R. R. Co.*, 18 Iowa, 280.

For the errors above pointed out, the judgment will be reversed, and the cause remanded for a new trial.

REVERSED.