[No. 4694.   Decided February 29, 1904.]

WALTER V. R. CROOKER, *Respondent*, v. PACIFIC LOUNGE AND MATTRESS COMPANY, *Appellant*.[1]

APPEAL—DISMISSAL—MOTION FOR NEW TRIAL.   An appeal will not be dismissed for want of a motion for a new trial, where a paper filed and served was considered as such a motion without objection.

SAME—NECESSITY OF.   A motion for a new trial is not necessary to secure a review of errors involved in the disposition of the case and fully presented below.

MASTER AND SERVANT—NEGLIGENCE—CUSTOM TO GUARD MACHINE—ADMISSIBILITY UNDER GENERAL ALLEGATION.   Proof of a general custom to place guards upon ripsaws is admissible under a general allegation of negligence in failing to provide a guard, after a promise so to do.

SAME—PROOF OF GENERAL CUSTOM TO ESTABLISH NEGLIGENCE. Proof of a general custom to guard a ripsaw is admissible as tending to show whether appellant exercised reasonable care.

SAME—EVIDENCE IN REBUTTAL—CUSTOM TO CONTRADICT DEFENDANT'S EXPERTS.   Where a plaintiff's expert witnesses had testified that spreaders were necessary adjuncts to hand-fed ripsaws, and defendant's experts testified that they were antiquated devices and were being generally discarded, it is not error to permit testimony in rebuttal to the effect that, upon examination of the mills and factories at the place in question, spreaders were found to be generally used.

APPEAL—DECISION—LAW OF CASE—SAME EVIDENCE AS TO CONTRIBUTORY NEGLIGENCE.   Upon the second appeal of a case, after substantially the same evidence, the decision on the first appeal that plaintiff was not guilty of contributory negligence becomes the law of the case, and is conclusive.

MASTER AND SERVANT—OPERATION OF RIPSAW—CUSTOMARY MANNER—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.   In an action for personal injuries received while operating a ripsaw, when it appears that the plaintiff was operating the machine in the customary manner, the question of his contributory negligence, in failing to remove a sliver so that it would not be caught by the saw, is for the jury.

[1]Reported in 75 Pac. 632.

SAME—PROMISE TO REPAIR DEFECT—ASSUMPTION OF RISKS AFTER
PROMISE—INSTRUCTIONS.    Instructions that an operator of a ma-
chine does not assume the risk of a defect after a promise to
repair, and as to his duty in the premises, approved.

SAME—AGE OF BOY OPERATING MACHINE—CONTRIBUTORY NEGLI-
GENCE—INSTRUCTIONS—PARTICULAR EVIDENCE.    While the practice
of trial courts in calling a jury's attention to particular evidence
is not to be commended, it is not necessarily reversible error to
state that the jury may consider the age and experience of a boy
injured while operating a ripsaw, upon the question of his con-
tributory negligence.

Appeal from a judgment of the superior court for Pierce
county, Chapman, J., entered December 2, 1902, upon the
verdict of a jury rendered in favor of the plaintiff for
$2,500 damages for the loss of an eye, sustained while
operating a ripsaw in defendant's factory, and caused by
a stick thrown by the saw.    Affirmed.

*Reynolds & Griggs* and *Stiles & Doolittle,* for appellant,
contended, *inter alia,* that it was error to admit evidence of
general custom as to the use of spreaders without any alle-
gation in the pleadings making that an issue in the case.
*Southwick v. First Nat. Bk.,* 84 N. Y. 420; *Knahtla v.
Oregon etc. R. Co.,* 21 Or. 136, 27 Pac. 91; *Woodward v.
Oregon R. & Nav. Co.,* 18 Or. 289, 22 Pac. 1076; *Worms-
dorf v. Detroit City R. Co.,* 75 Mich. 472, 42 N. W. 1000,
13 Am. St. 453; *Chicago etc. R. Co. v. Young,* 26 Ill.
App. 115; *Waldhier v. Hannibal etc. R. Co.,* 71 Mo. 514;
*Ely v. St. Louis etc. R. Co.,* 77 Mo. 34; *Redford v. Spo-
kane St. R. Co.,* 9 Wash. 55, 36 Pac. 1085.    Whether
there was negligence must be determined by the facts, and
not by any general custom or practice.    *Ilwaco etc. Nav.
Co. v. Hedrick,* 1 Wash. 446, 25 Pac. 335, 22 Am. St.
169; *Bodie v. Charlston etc. R. Co.,* 61 S. C. 468, 39 S. E.
715; *Andrews v. Birmingham etc. R. Co.,* 99 Ala. 438,
12 So. 432; *Colf v. Chicago etc. R. Co.,* 87 Wis. 273, 58
N. W. 408; *Lewis v. Smith,* 107 Mass. 334.

*Govnor Teats,* for respondent.

PER CURIAM.—This action was brought by plaintiff, Walter V. R. Crooker, a minor, by his father as guardian *ad litem,* against defendant, Pacific Lounge and Mattress Company, a corporation, to recover for personal injuries. The cause was before this court on a former appeal, and is reported in 29 Wash. 30, 69 Pac. 359. The plaintiff was nonsuited at the first trial in the superior court, and on his appeal to this court the judgment of nonsuit was reversed, and the cause was remanded for a new trial. When the case was subsequently called for trial on the 17th day of November, 1902, the superior court made an order discharging W. G. Crooker, as guardian *ad litem* for plaintiff, and directing that the cause proceed in the individual name of Walter V. R. Crooker as sole plaintiff. At the last trial, a verdict was rendered in favor of plaintiff for $2,500. Judgment having been rendered on this verdict in favor of plaintiff, the defendant appeals.

The respondent moves to dismiss the appeal because appellant failed to serve and file a motion for a new trial. The record discloses that there was a paper served and filed in this action which was treated by the parties, and considered by the trial court on its merits, as a motion for a new trial, without any objections being interposed by respondent. Moreover, this court has decided that, where matters alleged as error were involved in the disposition of the case, and were fully presented to the court below, rulings had thereon, and exceptions taken, a motion for a new trial is unnecessary in order to obtain a review of such rulings on appeal. *Tullis v. Shannon,* 3 Wash. 716, 29 Pac. 449; *Dubcich v. Grand Lodge A. O. U. W.,* 33 Wash. 651, 74 Pac. 832. The motion to dismiss the appeal is therefore denied.

The plaintiff suffered the injuries of which he complains while in the employ of the defendant corporation and while operating a ripsaw in its factory. The allegations in the pleadings of the respective parties to this controversy are fully stated in the former opinion. There has been no change in the issues since the cause was heard in this court on the former appeal. The testimony in plaintiff's behalf was of the same general character on the last trial as upon the first one, wherein the plaintiff was nonsuited in the superior court. The testimony in behalf of defendant company on this last trial was in direct conflict with plaintiff's evidence on all the material points in the controversy.

(1) In his complaint the respondent alleged:

"That he was injured through the negligence of the defendant in not placing the spreader or guard before the said saw, and thus protecting the saw from the splinters, sticks and boards from coming against it, and thus protecting the operator of the said saw and allowing the said saw to remain unguarded, by reason of which the said saw caught and threw the splinter which struck and injured the plaintiff; and that the said plaintiff was injured within such a time, after said defendant had promised to guard the said saw, as it would be reasonable to allow the said defendant to place on the said saw, the spreader or guard; and that the said plaintiff was not injured through any negligence on his part."

In the court below the appellant's counsel objected to the admission of evidence pertaining to the custom or usage of placing guards or spreaders on ripsaws to prevent accidents happening to operators, such as is complained of in the case at bar, on the ground,

".  .  .  that this case is based entirely upon a promise, and it does not make any difference whether this sort of appliance has ever been used by anybody else or not. The only question is whether it was stipulated for, and whether the promise was kept, and whether the injury was caused

by the absence of this guard.    There is only one point to
which such testimony could go, and that would be to show
what was the usual form of guard."

At subsequent stages of the trial, while respondent's wit-
nesses were being examined in chief, appellant objected to
the reception of testimony of this character on the grounds
of its immateriality and irrelevancy.    In this court it con-
tends that the evidence was inadmissible on the grounds
that it was not embraced within the pleadings and did not
tend to establish negligence on its part.

But we think neither ground is tenable.    It is not nec-
essary to set out the negligent acts in detail, but a general
averment that the defendant was negligent in doing or not
doing the particular act complained of is sufficient.    We
so held in *Collett v. Northern Pacific R. Co.*, 23 Wash.
600, 63 Pac. 225.    And in *Coates v. Burlington etc. R.
Co.*, 62 Iowa 486, 17 N. W. 760, it was held that, when
the negligence complained of was that defendant had failed
to block a frog in its track, it was proper to allow plaintiff
to prove, without averring it in his petition, a custom on
the part of defendant to block all frogs along its line, for
the purpose of showing an admission that frogs unpro-
tected are dangerous to employes.    See, also, *Kelly v.
Southern Minn. R. Co.*, 28 Minn. 98, 9 N. W. 588; *Flan-
ders v. Chicago etc. R. Co.*, 51 Minn. 197, 53 N. W. 544;
21 Am. & Eng. Enc. Law (2d ed.), 524.

As to the second objection, we think the proof com-
plained of was relevant on the question whether the ap-
pellant had exercised reasonable care in not following a
custom in guarding ripsaws; not that a compliance with
the particular custom would necessarily exonerate, or non-
compliance necessarily charge it with negligence; but its
conduct in that regard was a material fact for the con-
sideration of the jury, in connection with the other facts

and circumstances developed by the evidence in the case. See, *Bodie v. Charleston etc. R. Co.*, 61 S. C. 468, 39 S. E. 715, wherein the court observes: "It was for the jury to say whether such usual or customary method was such as a careful and prudent person should adopt under the circumstances."

(2) It is next urged that the trial court erred in admitting, over appellant's objections, the evidence of James Batcheler, a witness for respondent, called in rebuttal. Expert witnesses on behalf of respondent testified that spreaders were necessary adjuncts to hand-fed ripsaws in order to prevent edgings and splinters from catching on the teeth of the saw and being thrown where they were liable to strike the operator. Witnesses of the same class on behalf of appellant testified that spreaders were antiquated devices on ripsaws, impracticable, and augmented the danger to operators, and were being generally discarded. Respondent thereafter put Batcheler on the stand, who testified that about the last of June, 1901, he visited some of the mills and factories in Tacoma, and that out of the twenty-seven ripsaws he examined he found twenty-four of them guarded. We think the trial court committed no error in admitting this evidence. It tended to show that spreaders were still in use and practicable, in contradiction of the testimony in appellant's behalf to the effect that such guards had been abandoned in the manufacturing establishments using hand-fed ripsaws.

(3) Appellant complains that the trial court erred in not granting its motion for a nonsuit, on the ground that the evidence in respondent's behalf showed him to be guilty of contributory negligence. The theory of appellant's counsel is that the testimony showed that the sliver, which struck respondent and caused the injury, did not come from the back of the saw, but from the side, where the

spreader would have had no effect upon it; that it was carelessness on respondent's part to leave the sliver lying where it could be caught in the teeth of the saw while engaged in sawing the next cut. The respondent testified to the manner of his injury as follows:

"And I went down and started to work on the ripsaw and ripped a piece, and the saw was very dull and it didn't work very good, and I tried another saw and it was in the same condition, and I went to him [meaning Mr. Parker, the foreman] and told him it would not work, and I spoke to him about the saw not having a spreader on and asked him how it was that he hadn't put the spreader on, and he said he didn't have time, but was going to do it as soon as he got time; and he told me that he would file one of the saws, and for me to use the other one until he got that one done; and I went back and started to rip, and I ripped four or five pieces, and then the saw caught the edge that I ripped off, and threw it up and hit me in the eye and put my eye out."

Witness further testified, that the splinter which struck him was about ten inches long; that it laid between the saw and the gauge along side of the saw; and, while respondent was ripping another piece of board, instead of the splinter being pushed off the table, it got around behind the saw, catching in its teeth, which threw it forward; that, if there had been a guard on the saw at the time, it would not have been possible for the splinter to have got caught in that manner; that rip-sawyers depend upon the pieces which are being ripped off to clear the board, and there is no appliance for knocking these edgings away from the saw. On cross-examination, respondent testified, in response to questions put to him by appellant's attorney regarding this sliver, as follows:

"Q. Why didn't you push it out of the way? A. It wasn't the proper thing to do. Q. You knew that there was danger that things of that kind might get on the saw?

A. Yes, sir; there is danger of it, but there is more danger in putting your hands down in there and pushing it out." There was also other testimony in respondent's behalf, tending to corroborate him, that a spreader on a ripsaw lessened the danger to the operator, and that it was unsafe to use such ripsaw without a guard.   There was also some evidence on behalf of respondent to the effect that to allow these slivers and edgings to remain along side of the rapidly revolving saw without a guard was attended with more or less danger to the operator, unless such slivers and pieces were pushed off the table by the hand, or with a stick, before ripping the next cut.

The above matters were in the record before this court on the first appeal, and the question of contributory negligence was elaborately argued by the respective counsel, on both sides of the controversy, from the same standpoint as now presented here by appellant.   It is true that in a former opinion the duty of the then respondent to have provided a guard or spreader for the saw, pursuant to the promise of its foreman, was the principal question discussed and considered by this court; still, evidence of the above character was properly in the record; and, as we reversed the decision of the trial court granting respondent's motion for a nonsuit, and remanded the case for a new trial, it seems to us that, under the well settled rule, this holding has become the law of the case, and we are bound by it on this appeal, even though it may not meet with our approval at this time.   *Wilkes v. Davies,* 8 Wash. 112, 35 Pac. 611, 23 L. R. A. 103; *Furth v. Snell,* 13 Wash. 660, 43 Pac. 935; *Dodge v. Gaylord,* 53 Ind. 365; *Eversdon v. Mayhew,* 85 Cal. 1, 21 Pac. 431, 24 Pac. 382; note to *Hastings v. Foxworthy,* 34 L. R. A. 321.

But were it otherwise, we think the question was properly submitted to the determination of the jury.   We ap-

preciate fully the force of the argument of appellant's counsel that where there are two ways of working about machinery, one absolutely safe and the other way attended with peril and danger, an employe who voluntarily chooses the perilous method rather than the safe one cannot recover for injuries thereby sustained; but whether, in the case at bar, the respondent did do this was a debatable question. The respondent testified, and in this he was supported by other evidence, that he was operating the ripsaw in question in the customary manner when injured; and, this being so, the question of his negligence was one for the jury, and not for the court.   It must be made to appear by evidence which leaves no room for dispute that the injured person was guilty of contributory negligence, before a court is warranted in taking that question from the jury.

(4) Appellant further contends that the trial court erred in giving certain instructions to the jury at the trial.   The criticisms as to the 8th and 10th instructions have been heretofore considered and answered in this opinion in the discussion relating to the usage and custom in guarding ripsaws.   These instructions are consistent with the rules of law declared by this court on the former appeal, which have become the law of the case.   The ninth instruction given by the trial court, of which appellant complains, is as follows:

"A general rule of law is that a person working with a defective or unguarded machine, and without complaint, and knowing of the dangers of the same, assumes the danger of the defect or unguarded part; but there is no longer any doubt that where an operator of machinery has expressly promised to repair a defect, the workman does not assume the risk of an injury caused thereby, within such a period or time after the promise as would be reasonably allowed for its performance; nor indeed, is any express promise or assurance from the master necessary.   It is suf-

ficient that the workman may reasonably infer that the matter will be attended to.

"So you are instructed that if the plaintiff, at the time of his employment and at the time of the accident, saw the danger from the lack of the guard, and complained of the same to the foreman, and the foreman promised to put on a guard, and the plaintiff went to work and continued at work, on the promise, and you further find that the danger was not so imminent and immediate that a reasonably prudent man would not go to work or continue at work on the saw, and that at the time of the accident the plaintiff was relying upon the foreman's promise to place on a guard, then you are instructed that the plaintiff did not assume the risk and danger of an injury resulting from the lack of a guard."

This instruction is sustained by the principles of law announced in the former opinion and the authorities therein cited.    To the same effect, see, further, *Johnson v. Anderson & Middleton Lumber Co.,* 31 Wash. 554, 72 Pac. 107; *Indianapolis & St. L. R. Co. v. Watson,* 114 Ind. 20, 14 N. E. 721, 15 N. E. 824, 5 Am. St. 578; *Erdman v. Illinois Steel Co.,* 95 Wis. 6, 69 N. W. 993.

The court also instructed the jury in the following language:

"The operator of a dangerous machine who has received from his employer a promise to supply a device calculated to lessen the danger, must, if he elects to operate the machine before the device is attached, operate his machine with due and proper care, considering its unprotected condition, in order that he may avoid injury.    Therefore, it was the duty of the plaintiff while he was relying upon the promise to attach the spreader or guard, if such promise was made him, to handle the machine with reasonable care, in view of the fact that the spreader or guard had not been attached; and if he did not so handle it, he forfeited the promise and cannot now recover for his injury."

These principles of law are amply sustained by courts and elementary writers of the highest authority.    See, *Indian-*

*apolis & St. L. R. Co. v. Watson, supra.* The following instruction is also assigned as error by appellant:

"In considering the evidence on the question of contributory negligence, you may take into consideration the age of the plaintiff and his experience in the work he was at at the time of the accident, and whether or not he was an expert in the operation of ripsaws."

While the practice of trial courts in calling a jury's attention to particular items of evidence is not to be generally commended, we think that the superior court committed no prejudicial error in doing so in this instance.

(5) Error is assigned because the trial court refused to give certain instructions requested by the appellant. These we have examined in detail, and think all that is material in them was given in the general charge of the court.

There is no reversible error in the record, and the judgment is affirmed.