[No. 20874.   Department One.   April 5, 1928.]

THOMAS D. REDMON, *Respondent*, v. H. H. ANDREWS
et al., *Appellants*.[1]

[1] EVIDENCE (6)—JUDICIAL NOTICE—MANAGEMENT AND CONDUCT OF
OCCUPATIONS.  The courts will take judicial notice that a repu-
table insurance company would not issue an auto insurance
policy to a law violator of very bad reputation who had de-
molished a car while driving in a very intoxicated condition.

[2] SALES (109) — WARRANTIES — CONSTRUCTION AND OPERATION —
GUARANTY.  An agreement to give credit for an auto turned in
on the purchase of a new car for the sum realized on its resale,
consented to by the purchaser, does not make either party a
guarantor to the other and only requires good faith.

[3] SALES (167, 177)—CONDITIONAL SALES—OPERATION AND EFFECT AS
TO THIRD PERSONS—DELIVERY OF GOODS.  The mere execution
of a conditional sales contract, and delivery of the automobile
thereunder, does not constitute a "sale" of the car, within the
meaning of a contract requiring certain credits to be given upon
a sale where the conditional sales contract was dependent upon
securing insurance, and was assigned in contemplation thereof,
and was cancelled by mutual consent because of the impossi-
bility of obtaining insurance for the vendee.

[4] CUSTOMS AND USAGES (5-1)—PLEADING.  Evidence of a custom
recognizing the delivery of an automobile under a conditional
sale as a sale is inadmissible when not pleaded.

Appeal from a judgment of the superior court for
Yakima county, Moriarty, J., entered June 17, 1927,
upon findings in favor of the plaintiff, in an action on
contract.  Reversed.

*Joseph C. Cheney* and *Nat U. Brown*, for appellants.
*McAulay & Freece*, for respondent.

TOLMAN, J.—This case was here on a prior appeal
(*Redmon v. Andrews*, 143 Wash. 102, 254 Pac. 453),
and the facts, so far as there set forth, need not be

[1]Reported in 266 Pac. 178.

here repeated. It was there held that a vendor in a conditional sales contract, by the sale and assignment of the contract, thereby parted with all title to the goods covered by the contract. When the case came on again for trial in the superior court, it was made to appear that the contract provided for full coverage insurance upon the property at the expense of the vendee, that such insurance was applied for and the contract discounted to the General Credit Company on the strength of insurance being issued, and that the defendants (appellants here) in selling the contract guaranteed, in writing, the full performance of its terms. Before the insurance policy was made effective by acceptance by the general agent of the insurance company, an investigation was made of the moral risk, which was found to be bad. The general agent reported to the General Credit Company as follows:

"Regarding the above policy, we have been informed that the assured is a very undesirable person. We understand he is running a hotel of questionable reputation where intoxicating liquor is sold, he has been in jail several times charged with minor penal offenses including liquor violation, was tried in court this summer for driving car while intoxicated and was found guilty by a jury and was in fact in a very intoxicated condition, having demolished the car and putting all the passengers including himself in the hospital. He was also in a shooting scrape with a man, growing out of some differences over a woman of poor reputation.

"On investigation you will find our statements to be correct, and we ask you to kindly take up this policy immediately and return it to us for cancellation."

[1] It is not seriously contended that other insurance could have been obtained, and we think, if necessary, we may take judicial notice that no reputable insurance company would issue a policy after one had been denied or cancelled upon the grounds stated.

The terms of the contract being thus uncomplied with in the matter of insurance, the purchaser of the contract demanded of the guarantors a return of the purchase money. That demand was complied with and the contract reassigned to the original vendors, who disclosed the condition to the vendee, Howard, and by agreement with him took back the car and returned to him the money he had paid. The contract was thereupon, by mutual consent, cancelled.

There is no hint of collusion in any of these matters, and the appellants seem to have acted in good faith and for the best interests of all interested in the car covered by the contract throughout.

[2] The question now presented is, has there been a sale of the big six Studebaker car within the meaning of the original agreement between respondent and the appellants? The trial court held that there had been such a sale, and entered judgment accordingly, from which judgment the defendants have appealed.

The original contract, while its terms are only partially in writing, seems to clearly indicate that the big six car was believed to be worth $1,350; that appellants were willing at once to credit one-half of that sum, but were unwilling to credit anything more until it should be realized by the sale of the car. Both parties apparently realized that it might not be possible to net the full sum of $1,350 by a resale, hence it was agreed that the car might be sold for a less sum, with the consent of the respondent, and of course, in that event, a correspondingly less credit would be due the respondent. In other words, by the giving of the original credit, both parties became jointly interested in the car; but beyond the exercise of good faith in carrying out the terms of the contract, we cannot see that either became a guarantor to the other in any respect.

[3] The mere execution of the conditional sales contract, and the delivery of the chattel thereunder, does not constitute a sale. *Holt Mfg. Co. v. Jaussaud,* 132 Wash. 667, 233 Pac. 35, 38 A. L. R. 1312. Ordinarily, to constitute a sale, title must pass. *Spokane v. Baughman,* 54 Wash. 315, 103 Pac. 14. And the theory of the former opinion in this case is that, on the face of the record, as it then stood, appellants here (respondents there) were estopped to deny that they had so parted with the title. Now, however, the full facts are before the court, and it clearly appears that appellants acted properly, and as they were legally bound to do, in taking a reassignment of the contract from the General Credit Company and in cancelling that contract. Hence, there was no completed sale. *Kost v. Reilly,* 62 Conn. 57, 24 Atl. 519.

[4] It is urged here that there is a custom in the automobile trade recognizing the delivery of a car under a conditional sales contract as a sale, and the stipulated facts show that plaintiff's witnesses would so testify. No such custom was pleaded, and therefore evidence to sustain it was inadmissible. But, in any event, it seems doubtful if a custom in direct conflict with the settled law of the state should be recognized.

We conclude, upon a survey of the whole case, that appellants' attempts to effect a sale were made in good faith, but were ineffectual; that no sale, in contemplation of law, was effected, and that the car in question is still owned in common by the parties hereto.

The judgment appealed from is reversed, with directions to dismiss the action.

PARKER, ASKREN, and FRENCH, JJ., concur.

MITCHELL, J., concurs in the result.