[No. 28583.  *En Banc.*  September 15, 1942.]

A. W. CODD *et al., Respondents,* v. WESTCHESTER FIRE INSURANCE COMPANY, *Appellant.*[1]

[1]Reported in 128 P. (2d) 968.

*R. Donald Hoisington* and *Roy A. Redfield,* for appellant.

*George M. Ferris* and *Wernette & Crowley,* for respondent.

BEALS, J.—A. W. Codd and Geneva A. Codd are, and for many years have been, husband and wife, Mr.

Codd at all times herein mentioned having been engaged in the lumber business in Spokane county. He will be referred to in this opinion as though he were the sole party plaintiff and respondent. Westchester Fire Insurance Company is a New York corporation, authorized to do business in the state of Washington, and, at the dates hereinafter mentioned, maintained a general agency in the city of Seattle and a local agency in the city of Spokane.

For some time prior to November, 1938, Mr. Codd was operating a sawmill in or near the city of Spokane, and, during the month mentioned, a representative of the insurance company called upon him to discuss the matter of the issuance of a policy of fire insurance upon his mill, which was reasonably worth between thirty and forty thousand dollars. For some time at least, Mr. Codd had been operating the mill without insurance against loss by fire, and when the insurance company's agent called upon him Codd registered interest, but stated that he could not take out insurance at that time, but was contemplating a deal which would enable him to take out such insurance.

Messrs. Ray W. Mackey and Grant R. Dixon, having interested themselves in the mill proposition, agreed to advance to Mr. Codd the sum of eight thousand dollars, demanding, however, that Mr. Codd insure the property to the extent of ten thousand dollars. Messrs. Mackey and Dixon having advanced the money, the insurance company caused to be issued two policies for five thousand dollars each, one issued by itself, the other by another company. We are here concerned only with the policy issued by Westchester Fire Insurance Company, in which Codd, Mackey, and Dixon were named as co-assureds. A Spokane representative of the insurance company, in explanation of this, testified "that it was easier to obtain insurance with Mackey

and Dixon's names as co-assureds." The interest of Messrs. Mackey and Dixon was merely that of mortgagees, they holding a mortgage on the mill property for eight thousand dollars.

The policy was delivered to one Faler, who was acting as bookkeeper for Mackey and Dixon. The policy bore date January 15, 1939, and sometime in March, 1939, the insurance company, desiring to terminate the risk, sent the net unearned premium to its Spokane agency, instructing it to pick up the policy, which Mr. Wells of the local agency did, substituting a policy in another company, which was later canceled, and with which we are not concerned. The Spokane agency, while in possession of the return premium, became insolvent, the liquidator of its assets paying to Mackey and Dixon certain dividends on account of the return premium, which it appears were later credited upon Mr. Codd's account.

The mill was destroyed by fire September 3, 1939, and in August, 1940, this action was instituted by Mr. Codd to recover judgment upon the policy, Mr. Codd contending that the policy had never been canceled, because he had received no notice of cancellation, as required by law (Rem. Rev. Stat., § 7154 [P. C. § 3016]), and because he had received no portion of the unearned premium which had been returned to the Spokane insurance agency.

The insurance company appeared specially, and moved to quash the service of summons, contending that the same was defective. The motion to quash was overruled, whereupon the insurance company answered, expressly preserving its special appearance. By its answer, the defendant denied liability on the policy, and pleaded several affirmative defenses.

A reply having been filed to these defenses, the cause was tried to a jury, which returned a verdict for the

plaintiff in the sum of five thousand dollars, the full amount of the policy. Defendant's motions for judgment notwithstanding the verdict, or in the alternative for a new trial, having been denied, defendant appealed from the judgment.

Error is assigned upon the denial of appellant's special appearance and motion to quash the summons; upon the exclusion of certain evidence bearing upon the alleged agency between Codd, as principal, and Mackey and Dixon, as agents; upon the refusal of the trial court to give certain instructions requested by appellant; upon the denial of appellant's motion for judgment at the close of the evidence; and upon the denial of its motion for judgment in its favor notwithstanding the verdict, or in the alternative for a new trial. Error is also assigned upon the entry of the judgment against appellant.

■ ■ Appellant first contends that the trial court erred in denying its motion to quash the service of summons, made by way of a special appearance. Rem. Rev. Stat., § 7044 [P. C. § 2920], provides for the issuance by the insurance commissioner of a certificate of authority to a foreign insurance company, and directs that no such certificate shall be issued until the insurance company has executed and filed in the office of the insurance commissioner a writing appointing that officer as attorney in fact of such company, upon whom all lawful process may be served. This section further provides that no proceeding shall be had in any case against such an insurance company within forty days after the date of the service of a summons upon the commissioner.

In the case at bar, the summons served upon the commissioner required appellant to appear within forty days after the service of the summons, exclusive of the day of service, and appellant argues that for this

reason the summons was fatally defective and did not confer jurisdiction upon the court to proceed in the action, and that its motion to quash should have been granted. Under the statute, had the summons required appellant to appear within twenty days, no further proceedings in the action could have been taken pursuant to the statute above quoted, within forty days after the service.

In the case of *Spokane Merchants Ass'n v. Acord,* 99 Wash. 674, 170 Pac. 329, 8 A. L. R. 835, in referring to the purpose of a summons, this court said:

"It only undertakes to perform the dominant purpose of any summons, namely, to give notice with certainty of the definite time prescribed by law within which after service the defendant must appear and defend, and to advise him of the consequences of his failure to do so. Any summons, therefore, which definitely and certainly gives notice of these things must be held a substantial, hence a sufficient, compliance with that form. . . . As said by this court in *Wagnitz v. Ritter, supra,* [31 Wash. 343, 71 Pac. 1035], 'the summons is in no sense a process of the court; it is a notice merely.'"

A summons is sufficient to confer jurisdiction upon the court when it performs the function of giving notice according to the statutory requirements, with such particularity and certainty as not to deceive or mislead. The summons here in question in no wise misled appellant, which was given the same assurance that no proceedings could be taken in the action within forty days after the service that appellant would have had had the summons required appellant to appear within twenty days.

Cases which hold that a summons is fatally defective when it requires the defendant to appear within a less time than the statutory period are not in point; neither are cases which hold that a summons in a special statu-

tory proceeding, which requires an appearance within some time other than that prescribed by the general statute, is defective. The trial court did not err in overruling appellant's motion to quash.

Appellant vigorously contends that its motion for judgment in its favor as matter of law should have been granted, arguing, *inter alia,* that respondent was estopped by the silence which he maintained after the cancellation of the insurance policy. Respondent first learned of the cancellation of the policy during the month of July, 1939. The mill burned September 3rd following. Respondent had, then, a period of at least a few days over a month within which to request the return and continuation of the canceled policy. As above stated, the policy was surrendered by Messrs. Mackey and Dixon, named insureds in the policy, who were holding the same as a protection of their loan secured by the mill property.

Rem. Rev. Stat., § 7154, provides the statutory method for cancellation of an insurance policy. Under this section, five days notice of the cancellation shall be given to the insured, and any unearned portion of a premium paid shall be returned to the insured by registered mail. Appellant did not comply with this statutory provision, relying instead upon its notice of cancellation to the Spokane agency, which in turn gave actual notice of the cancellation to Messrs. Mackey and Dixon, and received from them delivery of the policy.

In the case of *Consolidated Freight Lines v. Groenen,* 10 Wn. (2d) 672, 117 P. (2d) 966, we said:

"Estoppel by silence does not arise without full knowledge of the facts, and a duty to speak on the part of the person against whom it is claimed."

In the same case, the court quoted with approval from the case of *Blanck v. Pioneer Mining Co.,* 93 Wash. 26, 159 Pac. 1077, the following:

" 'Full knowledge of the facts is essential to create an estoppel by silence or acquiescence [citing cases]. . . . Mere silence, without positive acts, to effect an estoppel must have operated as a fraud, must have been intended to mislead, and itself must have actually misled. The party keeping silent must have known, or had reasonable grounds for believing, that the other party would rely and act upon his silence. The burden of showing these things rests upon the party invoking the estoppel.' "

The duty to notify respondent as one of the named insureds in the policy was placed by statute upon appellant. Respondent's silence did not in any manner mislead appellant, and no duty rested upon respondent to advise appellant concerning the statutory method to be followed in canceling an insurance policy. As the statutory method was not followed by appellant in its attempt to cancel the policy, it cannot be held as matter of law that respondent, by his silence, is estopped from contending that the policy was not canceled. The question of cancellation was properly for the jury, to be determined under the court's instructions. *Harms v. O'Connell Lbr. Co.,* 181 Wash. 696, 44 P. (2d) 785.

The trial court did not err in refusing to grant appellant's motion for judgment in its favor as matter of law.

Appellant assigns error upon the refusal of the trial court to give several instructions which appellant requested. No error is assigned upon any instruction which the court gave. Examination of the instructions as given by the court convinces us that the trial court properly instructed the jury concerning the issues presented. We find no reversible error in the refusal of the court to give any of the instructions requested by appellant.

We shall now consider appellant's contention that

the trial court erred in sustaining respondent's objection to certain testimony offered by appellant. In its answer, by way of an affirmative defense, appellant pleaded that its policy here in suit had been rescinded by mutual action of the parties in interest, and had been surrendered by Messrs. Mackey and Dixon, respondent's co-assureds, to the Spokane insurance agency, with intent and purpose of rescinding that policy, and that such rescission was followed by the substitution of other insurance policies accepted and received by the assureds in lieu of appellant's policy. Appellant further pleaded that Messrs. Mackey and Dixon were respondent's agents for all purposes pertaining to procuring and maintaining fire insurance on respondent's mill, and that respondent had ratified the acts of his agents in the premises. These allegations were denied by respondent in his reply. There was raised, then, by the pleadings, a direct issue of fact as to whether Mackey and Dixon were respondent's agents, with authority to act for him in connection with the matter of insurance upon the mill.

The mortgage in favor of Messrs. Mackey and Dixon provided that the mill should be "unceasingly insured against loss or damage by fire, in a company satisfactory to" Messrs. Mackey and Dixon, in a sum not less than ten thousand dollars. If, in fact, Messrs. Mackey and Dixon were respondent's agents, and authorized to secure substitute insurance, as a general principle, substitute policies so procured would operate to make void prior insurance, including the policy written by appellant, even though respondent had no statutory notice of the cancellation of appellant's policy, and did not receive the unearned premium.

During the course of the trial, appellant, in support of its contention that Messrs. Mackey and Dixon were respondent's agents, offered to prove that the National

Bureau of Fire Underwriters is an organization maintained as a clearing house where fire losses are recorded and checked, and that this organization is maintained and used by fire insurance companies throughout the country; that, when an individual has a bad fire record, he cannot procure further insurance; and that respondent had such a bad record, and in procuring the policy of insurance here in question, was compelled to rely upon Messrs. Mackey and Dixon to procure for him insurance which he (respondent) could not himself obtain.

In its answer, appellant did not plead the existence of any usage or custom to the effect that insurance companies used the service of the national bureau, and that a person who had a bad fire record could not procure insurance. Respondent contends that, because appellant pleaded no such matter, and for other reasons, the trial court properly sustained his objection to the introduction of the testimony offered by appellant.

It is argued that certain of our decisions support respondent's contention. In the case of *Citizens Nat. Bank v. Ariss*, 68 Wash. 448, 123 Pac. 593, the defendants offered to prove the existence of a custom among fruit dealers at Los Angeles, Seattle, and Tacoma, whereby a shipper of fruit would sign a draft upon the consignee, subject to inspection of the fruit by the consignee at the point of delivery, before payment of the draft. This court held that the trial court properly refused to admit evidence of this custom, because the testimony offered related to a custom in effect between buyers and sellers, and not to agents and principals, and was repugnant to an express authority shown to exist in the case. The court also called attention to the fact that there was no evidence

or offer of evidence that the plaintiff bank had any knowledge of the custom, and in the absence of such knowledge would not be bound thereby, citing 12 Cyc. 1041, 1042:

" 'Particular usages and customs of trade or business must be known by the party to be affected by them or they will not be binding, unless they are so notorious, universal, and well established that his knowledge of them will be conclusively presumed.' "

The fact that a person who has suffered an unusual number of fire losses cannot procure further fire insurance is so well known as to fall within the terms of the text cited. It is also true that, in the case last cited, the custom relied upon by the defendant was a local custom between a particular class of dealers in three cities, while the plaintiff, a bank, was not a dealer, and would not be presumed to have knowledge of such a custom.

In the case of *Wilkins v. Kessinger*, 90 Wash. 447, 156 Pac. 389, an action to recover a portion of a commission earned by the defendant in a real estate transaction, the complaint contained no allegation as to any local usage or custom among real estate dealers in the city of Tacoma concerning the division of an earned commission between brokers who jointly effected the sale, and plaintiff alleged no express agreement. At the trial, plaintiff offered evidence tending to show a local custom concerning this matter, which evidence the trial court admitted. This court held that, whether the complaint be construed as alleging an express contract or as stating an implied contract, evidence concerning a local custom or usage was inadmissible, because no such local custom or usage was pleaded.

This case is not controlling here, because the custom relied upon by the plaintiff was a *local* custom or usage, while in the case at bar, the custom relied upon by

appellant was national in its scope. It should also be noted that, in the case cited, plaintiff was attempting either to supplement an express contract by proving a custom, or to enforce an implied agreement by the same custom. In the case at bar, appellant pleaded the agency of Messrs. Mackey and Dixon, and evidence of the custom or usage was offered simply as tending to prove the existence of that agency by showing an impelling reason for the existence thereof.

In the case of *Redmon v. Andrews,* 147 Wash. 390, 266 Pac. 178, this court, concerning an alleged custom among automobile dealers, said:

"It is urged here that there is a custom in the automobile trade recognizing the delivery of a car under a conditional sales contract as a sale, and the stipulated facts show that plaintiff's witnesses would so testify. No such custom was pleaded, and therefore evidence to sustain it was inadmissible. But, in any event, it seems doubtful if a custom in direct conflict with the settled law of the state should be recognized."

Certainly no custom in direct conflict with the statutory law of the forum should be recognized by the courts, and, from the opinion, it appears that the custom referred to directly contradicted the admitted contract between the parties.

The three cases above discussed are not controlling here.

■ As to the admissibility of evidence of custom and usage in general, the rule is laid down in 25 C. J. S. 123-4, § 32, as follows:

"In accordance with the rules of pleading applicable to other matters it is not necessary to plead customs or usages of which the court will take judicial notice, and hence, the rule is that general customs need not be pleaded."

In the same text, at p. 125, it is stated that where a custom or usage is relied upon incidentally, and

only as evidence of some other fact in issue; it need not be pleaded.

In the case of *Warren v. Lebam Mill & Timber Co.,* 129 Wash. 565, 225 Pac. 628, this court held that evidence concerning a general custom prevalent among logging and lumber companies might be introduced, although the custom was not pleaded. Concerning this matter, the court said:

"It is true that no such custom was pleaded, and that appellant must recover upon the express contract which he alleges, if at all, but if such a custom prevails, proof of it might tend to show the reasonableness of the contract alleged and make it more probable that the parties did so agree. We think, therefore, the proof of the general custom should have been admitted for the purpose indicated, but for that purpose alone."

This case is in point here, as the testimony offered by appellant simply tended to prove the agency of Messrs. Mackey and Dixon, and certainly the testimony offered and rejected by the trial court would have made it more probable that the agency did in fact exist.

In the case of *United States v. Stanolind Crude Oil Purchasing Co.,* 113 F. (2d) 194, is found the following:

"A usage is a mode of dealing generally observed in a particular trade. A usage universally recognized and observed by those engaged in a particular trade throughout a state is a general usage. While it must be generally recognized by those engaged in the trade, it need not be observed in every individual transaction in order to be general.

"The court will take judicial notice of a general trade usage."

In the case of *Redmon v. Andrews, supra,* it appeared that a person who had an insurable interest in an automobile was regarded as a bad risk, having

suffered an accident while driving his car while under the influence of liquor. He was also a bad risk upon other grounds, and concerning this matter, we said:

"It is not seriously contended that other insurance could have been obtained, and we think, if necessary, we may take judicial notice that no reputable insurance company would issue a policy after one had been denied or cancelled upon the grounds stated."

In the early case of *Ryder-Gougar Co. v. Garretson,* 53 Wash. 71, 101 Pac. 498, this court said:

"We understand the rule to be that a general usage or custom need not be pleaded in order to admit evidence thereof to throw light upon a contract, the terms of which are obscure, and which is dependent upon evidence of such general custom to make it plain."

While the language quoted was not necessary to the decision of the case, it, together with the authorities cited in support thereof, indicates the court's view of the law governing evidence concerning a general custom.

It has been held in negligence cases that a custom, although not pleaded, may be proved

" . . . as an evidentiary fact tending to prove an ultimate pleaded fact, or as an evidentiary fact tending to prove a fact that tends to prove an ultimate pleaded fact." *Donk Bros. Coal & Coke Co. v. Thil,* 128 Ill. App. 249, 23 Ann. Cas. 1064.

See, also, 27 R. C. L. 196, § 40.

This court has held that, in an action for personal injuries, under an allegation that the defendant was negligent in failing to properly guard a saw, evidence that it was customary to guard such a machine was admissible. *Crooker v. Pacific Lounge & Mattress Co.,* 34 Wash. 191, 75 Pac. 632; *Thompson v. Issaquah Shingle Co.,* 43 Wash. 253, 86 Pac. 588.

614

■■■   The custom or usage concerning which appellant sought to introduce testimony tended strongly to support appellant's allegation that Messrs. Mackey and Dixon were Mr. Codd's agents. The custom upon which appellant relied was a national custom, and one of common knowledge on the part of the public generally. It would seem that the language of this court, speaking through Judge Tolman, in the case of *Redmon v. Andrews, supra,* to the effect that courts should take judicial notice of the fact that no insurance company writing indemnity insurance to protect the owners of automobiles would write a policy in favor of one who had an established bad record as a driver, applies with equal force to the well-recognized custom that fire insurance companies will not write a policy in favor of one who has suffered an unusual number of fire losses.

The testimony offered by appellant was admissible as tending to prove that Messrs. Mackey and Dixon were respondent's agents, as alleged by appellant in its answer.

The trial court erred in sustaining respondent's objection to the offer of proof made by appellant, and the judgment appealed from is accordingly reversed, with instructions to the trial court to grant appellant's motion for a new trial.

ROBINSON, C. J., STEINERT, SIMPSON, and DRIVER, JJ., concur.

BLAKE, MILLARD, and JEFFERS, JJ., dissent.